UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

DONNA C.,[1]

    Plaintiff,

v.                                                                1:20-CV-507 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
───────────────────────────────

## DECISION AND ORDER

Plaintiff Donna C. brought this action under the Social Security Act (the "Act"), seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 15. The Commissioner responded and cross moved for judgment on the pleadings. Dkt. 17. Plaintiff replied. Dkt. 18.

For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

On August 3, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB"). Tr.197.[2] Plaintiff's application was initially denied by the Social Security Administration ("SSA") on October 6, 2016. Tr. 80. Plaintiff then filed a written request for a hearing on November 15, 2016, Tr. 134 , which took place before an Administrative Law Judge ("ALJ") on December 10, 2018. Tr. 38-79. On January 9, 2019 Plaintiff applied for Supplemental Security Income ("SSI"), Tr. 210. Plaintiff protectively filed for widow's disability insurance benefits on November 30, 2018, which was escalated to the hearing level and considered with her DIB application. Tr. 15.

The ALJ issued a written decision on March 20, 2019, amending his prior decision of February 7, 2019 and denying Plaintiff's applications for DIB and disabled widow's benefits. Tr. 15-30. The ALJ approved Plaintiff's claim for SSI finding that Plaintiff was disabled as of November 16, 2017. Tr. 30. The Appeals Council denied Plaintiff's request for review of the denial of the other two claims on February 27, 2020. Tr. 1-5. Plaintiff then commenced this action. Dkt. 1.

## LEGAL STANDARDS

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court

---

[2] The filings at Dkt. 11 and Dkt. 12 are parts one and two, respectively, of the transcript of proceedings before the Social Security Administration. All references to Dkts. 11 and 12 are denoted "Tr. __."

2

must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II. <u>Disability Determination</u>

An ALJ evaluates disability claims through a five-step process established by the Social Security Administration to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 404.1520(a)(4)(iv); (e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform

physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* §404.1545. The ALJ then determines if the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If she can perform past work, she is not disabled and the analysis ends. *Id.* § 404.1520(f), (a)(4)(iv). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 404.1520(a)(4)(iv), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

I.  **The ALJ's decision**

The ALJ first found that Plaintiff met the Act's insured status requirements[3] through December 31, 2015. Tr. 18. Next, the ALJ found that Plaintiff did not

---

[3] "To be entitled to [DIB], claimants must demonstrate that they became disabled while they met the Act's insured status requirements." *Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019), as amended (Apr. 30, 2019) (citing 42 U.S.C. § 423(a)(1)(A),(c)(1)).

meet the Act's requirements for widow's disability benefits from October 1, 2008 through October 31, 2015; hereinafter the "prescribed period." Tr. 18. The ALJ then proceeded through the sequential evaluation process discussed above.

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 25, 2008. Tr. 19. At step two, the ALJ determined Plaintiff had the following severe impairments: "degenerative disc disease; hip disorder (enthesopathy); fibromyalgia and arthritis; breast cancer post lumpectomy; anxiety and depression." *Id.* The ALJ also found that Plaintiff had non-severe "gastroesophageal reflux disease (GERD), irritable bowel syndrome [IBS], and headaches" that did not "cause[] more than minimal work-related limitations" and had not "lasted or been expected to last for twelve continuous months." *Id.* At step three, the ALJ found that none of Plaintiff's limitations met or equaled a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* In making this determination the ALJ considered listing 12.04 Depressive, bipolar and related disorders. Tr. 20.

At step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions: "the claimant requires a sit or stand option at will, but must remain on task during the sit or stand period; frequent fingering and handling; occasional stooping, kneeling, crouching, and crawling; occasional ramps and stairs; no ladders, ropes, or scaffolds; no unprotected heights" and Plaintiff is "limited to unskilled low stress occupations defined as: simple routine tasks; basic work related decisions; rare changes in the

workplace setting; occasional interaction with the public; and frequent interaction with co-workers and supervisors." Tr. 21.

At the final step, the ALJ found that Plaintiff had been unable to perform any past relevant work since November 25, 2008. Tr. 26. The ALJ found that prior to November 16, 2017, wherein Plaintiff's age category changed to "an individual of advanced age," Plaintiff could have performed various occupations in the national economy. Tr. 27. Accordingly, the ALJ concluded that Plaintiff was not entitled to widow's disability benefits because she was not disabled as of the end of the prescribed period. Tr. 28. The ALJ also concluded that Plaintiff was not disabled prior to the expiration of insured status on December 31, 2015, and therefore denied her application for DIB. *Id.* The ALJ approved Plaintiff's SSI claim because Plaintiff became disabled on November 16, 2017 and continued to be disabled through the date of the ALJ's decision. *Id.*

## II. Analysis

Plaintiff makes four arguments in support of her motion. Dkt. 15-1. First, she contends that the ALJ erred in the application of the "special technique" at step three because "his analysis of specific functions seemed to suggest greater limitations." *Id.* at 21. Second, Plaintiff asserts that the ALJ improperly applied the "two-pronged standard" in evaluating her "assertions of pain and other limitations." *Id.* at 22. Third, she contends that the ALJ failed to "follow the treating physician rule in assessing detailed opinions from four of Plaintiff's treating medical sources." *Id.* at 26. Fourth, Plaintiff argues that "[t]he Agency

failed to abide by its own regulations in failing to recognize Plaintiff's protective filing date for [SSI] benefits."[4] *Id.* at 31.

For the reasons explained below, the Court finds Plaintiff's arguments to be without merit.

### A. The ALJ properly evaluated the medical opinion evidence.

Plaintiff filed for DIB before March 27, 2017, and, as such, the ALJ was required to apply the treating physician rule in his determination. 20 C.F.R. § 404.1527; *see, e.g., Barco v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018). Under the rule, if a physician has engaged in the primary treatment of the claimant, "the SSA recognizes a treating physician rule of deference." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Green-*

---

[4] Plaintiff applied for DIB on October 13, 2016, alleging disability beginning November 25, 2008. Tr. 197. Plaintiff subsequently applied for SSI on January 9, 2019. Tr. 210. The ALJ approved Plaintiff's SSI claim on March 20, 2019, finding that Plaintiff was disabled as of November 25, 2017, and "has continued to be disabled though the date of [the ALJ's] decision." Tr. 28. In making this determination, the ALJ considered Plaintiff's SSI claim relative to the "alleged onset date of disability" on November 25, 2008. Tr. 15, 19, 21, 26.
Plaintiff contends that she was prejudiced by the ALJ's failure to acknowledge her protective filing date of August 3, 2016, such that she was unable to receive SSI benefits "for the period prior to January 9, 2019," when she filed for SSI. Dkt. 15-1 at 31. Because the ALJ evaluated Plaintiff's claims for disability beginning on November 25, 2008 and determined Plaintiff was not disabled before November 25, 2019, any failure by the ALJ to acknowledge Plaintiff's August 3, 2016 statement of intent to file for SSI was harmless. *See* 20 C.F.R. § 416.345 ("[The Commissioner] will use the date of an oral inquiry about SSI benefits as the filing date of an application for benefits only if the use of that date will result in [the claimant's] eligibility for additional benefits.").

*Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)) (internal quotation marks omitted).

Generally, an ALJ determines that a treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see e.g., Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (citing *Burgess*, 537 F.3d at 128), *Smith v. Berryhill*, 740 F. App'x 721, 724 (2d Cir. 2018) (holding that an ALJ "may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence" or "is internally inconsistent or uninformative"). And an ALJ will "'give good reasons in its notice of determination or decision for the weight it gives the treating [physician]'s . . . opinion.'" *Estrella*, 925 F.3d at 95-96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also* 20 C.F.R. § 404.1527(c)(2).

"[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2009)). But the ALJ must at least consider the opinions of non-acceptable medical sources, or "other sources," 20 C.F.R. § 404.1527(c)—such as nurse practitioners and physician's assistants—even

9

if the ALJ is "free to discount" such opinions "in favor of the objective findings of other medical doctors," *see Genier*, 298 F. App'x at 108-09.

Plaintiff argues that the ALJ improperly analyzed the opinions of "Plaintiff's treating medical sources,"[5] including Ya Li Chen, M.D.; Rachel Long, D.O.; nurse practitioner ("NP") Terry Yonker;[6] and physician's assistant ("PA") Jennifer Monna in formulating the RFC. Dkt. 15-1 at 26.

In formulating the RFC, the ALJ assigned "little weight" to the opinions of treating physicians Dr. Chen and Dr. Long. Tr. 24-25 (citing *id.* at 1637-40, 1562-65). The ALJ gave "partial weight" to PA Monna's opinion,[7] Tr. 25 (citing *id.* at 492), and "less weight" to NP Yonker's opinion, Tr. 26 (citing *id.* at 1641-46).

---

[5] "Treating source means [a claimant's] own acceptable medical source who provides . . . or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2). "Acceptable medical sources" include licensed physicians and licensed psychologists. *Id.* § 404.1521(a)(1),(2).

[6] Plaintiff also argues that the ALJ "neglected to mention" NP Yonker's findings in his analysis of the "paragraph B" criteria at step three. Dkt. 15-1 at 21. But this contention is facially inaccurate. A review of the ALJ's decision reveals that he referenced NP Yonker's report no less than three times in his step three analysis. Tr. 20, 21 (ALJ citing "Exhibit B32F" where NP Yonker's report is found in the administrative transcript). As such, the Court disagrees with Plaintiff's assertion.

[7] The ALJ gave "partial weight" to PA Monna's opinion overall, but "little weight" to the portion of her opinion "regarding the claimant's inability to work" because opinions "regarding disability or the general ability to work . . . pertain to a matter reserved to the Commissioner." Tr. 25. This determination was proper because an opinion on the ultimate issue improperly opines on a matter reserved to the Commissioner—that is, whether the claimant is disabled. *See* 20 C.F.R. § 404.1527(d).

Though the ALJ did not give controlling weight to the opinion of Plaintiff's treating physicians, the ALJ otherwise provided "good reasons"—that is, "reasons supported by substantial evidence in the record"—for the weight he assigned. *See Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) (The ALJ "will always give good reasons in [his] notice of determination or decision for the weight we give [the claimant's] treating source's opinion."); *see also* 20 C.F.R. § 404.1527(b)(2). And if "a searching review of the record" satisfies the court "that the substance of the treating physician rule was not traversed," the court will affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).

The ALJ determined that "[a]lthough Dr. Long is a treating source, her opinion is entitled to" less-than-controlling weight because it "is inconsistent with her own notes" and with "the diagnoses, treatment records, and other objective evidence." Tr. 24. The ALJ also found that Dr. Chen's opinion was "not consistent with the diagnoses, treatment records, and other objective evidence." Tr. 24-25. He found specifically that, contrary to Dr. Chen's findings of significant limitations, "the record demonstrated that Naproxen helped with the claimant's symptoms," Tr. 25 ((citing *id.* at 865) (PA Monna noted that Plaintiff had taken Naproxen for radiating hip and low back pain on her left side "which seemed to help.")).

Moreover, the RFC was largely consistent with Dr. Long's and Dr. Chen's opinions. For example, Dr. Long found that Plaintiff needed to "sit, stand, walk and take breaks as needed." Tr. 1640. Dr. Chen similarly opined that Plaintiff needed to take unscheduled breaks and "shift[] positions at will." Tr. 1563. These findings

are consistent with the ALJ's determination that "the claimant requires a sit or stand option at will" throughout the workday. Tr. 21. Dr. Long also opined that Plaintiff was "[c]apable of low stress work," Tr. 1640, consistent with the RFC limiting Plaintiff to "low stress occupations," *id.* at 21. The ALJ also limited Plaintiff to "no [climbing] ladders, ropes, or scaffolds" and no exposure to "unprotected heights," Tr. 21, a finding more limiting than Dr. Long and Dr. Chen opined, *see* Tr. 1564, 1639 (Drs. Long and Chen's opinions finding no limitations for climbing ropes or scaffolds, no limitation on exposure to unprotected heights, but limiting Plaintiff to never climbing ladders).

The ALJ was not required to defer to the opinions of non-acceptable medical sources, such as NP Yonker and PA Monna. *See Genier*, 298 F. App'x at 108 (2d Cir. 2008). Nevertheless the ALJ gave more deference to PA Monna's opinion than nearly every other medical opinion he considered. *See* Tr. 24-26 (ALJ gave "some," "little," or "less weight" to every other medical opinion considered). And in making his determination, the ALJ sufficiently addressed both source's findings. *See* SSR 06-03P, at *6 (The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."). The ALJ cited to NP Yonker's findings multiple times in support of his analysis of the "paragraph B" criteria at step three. *See* Tr. 20-21. Where Plaintiff argues that the ALJ did not adopt some of NP Yonker's findings, the ALJ was not required to do so. And though Plaintiff argues the ALJ "neglected

to mention" aspects of NP Yonker's opinion in his determination, Dkt. 15-1 at 21, the ALJ need not recite every piece of evidence that supports his decision so long as the record "permits [the reviewing court] to glean the rationale of [the] ALJ's decision," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

For portions of the ALJ's determination that did not reflect exactly one of the seven medical source opinions he considered, *see* Tr. 24-25, the ALJ did not err in formulating the RFC based on other evidence. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Since the record contained sufficient evidence to assess Plaintiff's RFC, the ALJ did not rely on opinion evidence at all. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) ("Although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity") (internal quotations omitted) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)).

Moreover, Plaintiff's "disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents [this Court] from reweighing it." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016). In other words, to the extent Plaintiff objects to the ALJ's consideration of the medical opinion

13

evidence, this Court may not "decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the [ALJ]." *Fanton v. Astrue*, 2011 WL 282383, at *2 (W.D.N.Y. Jan. 25, 2011) (quoting *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986)); *see also Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)).

If the "administrative record contains 'sufficien[t] evidence' to support the agency's factual determinations" the court will find that its determinations are based on substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019). Accordingly, remand is not required here.

### B. The ALJ properly evaluated Plaintiff's subjective reports at step three of the sequential evaluation.

Plaintiff argues that the ALJ "neglected to apply [the] two-pronged standard" in evaluating her "assertions of pain and other limitations." Dkt. 15-1 at 22. This contention is without merit.

"The regulations provide a two-step process for evaluating a claimant's assertions of pain." *Genier*, 606 F.3d at 49. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* Second, the ALJ will consider "the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* (quoting 20 C.F.R. § 404.1529(a)) (internal quotation marks omitted).

Here, the ALJ evaluated "the claimant's statements about the intensity, persistence, and limiting effects of her [mental and physical] symptoms," Tr. 22-24; and found that these statements were "inconsistent with the record and ultimately demonstrate[d] that the claimant's symptoms did not inhibit her ability to function on a daily basis," Tr. 22. The ALJ concluded that, though "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's subjective reports of the limiting effects of her symptoms were "not fully supported for the reasons explained in this decision." Tr. 24.

In her brief, Plaintiff acknowledges that the ALJ completed both parts of the two-prong analysis. Plaintiff asserts that the ALJ "skipped over the first prong of the analysis," Dkt. 15-1 at 23, but in that same paragraph she noted that the ALJ "briefly acknowledged the first prong at the end of his analysis," *id.*

Plaintiff also contends that it was "unclear . . . whether the ALJ found" that her contentions of pain were inconsistent with her alleged impairments, or that they were consistent but found that "the intensity and persistence she identifies . . . [were] unsubstantiated." Dkt. 15-1 at 24. But given that Plaintiff subsequently admits "the ALJ stated the second scenario applied," *id.*, the ALJ's conclusion on this point apparently was clear.

The Court does not agree that the ALJ failed to apply the two-prong test. The Court has considered Plaintiff's remaining arguments and finds them to be without merit.

## CONCLUSION

For the above reasons, the Court GRANTS the Commissioner's motion for judgment on the pleadings (Dkt. 17) and DENIES Plaintiff's motion for judgment on the pleadings (Dkt. 15). The Clerk of the Court will close this case.

SO ORDERED.

Dated:   June 8, 2022
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE